## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 22 2016, 8:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Devon Ballard, *Appellant-Defendant,* | September 22, 2016 |
| | Court of Appeals Cause No. 78A01-1604-CR-733 |
| v. | Appeal from the Switzerland Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable W. Gregory Coy, Judge |
| | Cause No. 78C01-1501-FC-18 |

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Devon Ballard (Ballard), appeals his conviction and sentence for burglary, a Class C felony, Ind. Code § 35-43-2-1.

[2] We affirm.

## ISSUES

[3] Ballard raises two issues on appeal, which we restate as follows:

(1) Whether there was sufficient evidence to sustain Ballard's burglary conviction; and

(2) Whether Ballard's sentence is inappropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

[4] During the early morning hours of March 1, 2011, Ballard called Luke May (May), a person he had known since elementary school and played basketball with at a nearby park, asking whether he could borrow a saw. May agreed and when Ballard arrived to pick it up, Ballard informed May that he wanted to "cut open the pop machine" at Fairview Grocery Store. (Transcript p. 97). May entered Ballard's vehicle and they drove to the grocery store. Both took turns at cutting the vending machine open, but they were unsuccessful. At that point, Ballard kicked the door to the grocery store open and after a few minutes, he exited the store with "an arm full of cigarettes" and proceeded to put them in the trunk of his car. (Tr. p. 97). According to May, Ballard went back inside

the store a second time to get more cigarettes and emerged with a trash bag, which Ballard put in the trunk of his car.

[5] At approximately 2:00 a.m., Jay Baker (Baker), who lived across the street was awakened by loud banging noises. When he looked outside, he saw a man banging on the vending machine outside the grocery store and another man inside the store. Baker saw that the men were wearing hats—with one wearing "a toboggan-style hat" and the other "a fedora type" of hat. (Tr. p. 37). Baker called the police. Meanwhile, Ballard entered the grocery store a third time. May, who was maintaining visual surveillance the entire time, saw the police at the end of the road and he warned Ballard. May took off running and when Ballard exited the store, he ran in another direction. Later, May and Ballard were reunited in the woods nearby. From there, they ran in the same direction before May split off and ran home. May lost his toboggan hat in the woods.

[6] At approximately 4:00 a.m., Detective Chris Curry (Detective Curry) of the Switzerland County Sheriff's Department was dispatched to provide assistance with his K-9 partner in the burglary investigation. Detective Curry and the K-9 unit tracked the suspects' footprints through the field behind the grocery store and into a large wooded area. The officers were unable to continue with the search because the vegetation became too dense and it was dark. The following day, Detective Curry returned to the grocery store to survey the scene. Detective Curry observed that the store's merchandise was in disarray, there was damage to a vending machine outside, and tools had been left outside— namely a reciprocal saw, a sledge hammer, and a screwdriver. In addition, the

K-9 officer sniffed out a toboggan hat and brown glove in the woods nearby. Alice Webb (Webb), a co-owner of the grocery store, indicated to the police that she was missing a Tupperware container with $80 worth of change that they had removed from the vending machine the day before, coin rolls worth about $40, and about 24-30 packs of cigarettes. Local businesses were notified to be on the lookout for anyone using a large amount of change. On the same day, March 1, 2011, Ballard bought merchandise with rolled and loose change at a Marathon Gas Station. Ballard also used $60 in loose change to purchase a pre-paid phone card. Also, at a BP Gas Station, Ballard paid for merchandise with $10 in rolled quarters, and he exchanged $30 of rolled quarters for paper currency. The next day, March 2, 2011, Ballard went again to the Marathon Gas Station and asked to exchange a pack of cigarettes for money. The owner, who did not recall Ballard ever buying a carton of cigarettes at his store, refused.

[7] On March 3, 2011, Deputy Sherriff Richard Lock (Deputy Lock) interviewed Ballard. Ballard admitted that he used loose change to make purchases at BP and Marathon gas stations, and at CVS. A search warrant was subsequently obtained. When the police arrived to search Ballard's residence, they found the gate locked. Assistance was called to bring a bolt cutter, and while the officers were waiting, they saw a vehicle driving away from the residence and far back into a field and then returning to the residence. When the bolt cutter arrived, the officers gained entry to Ballard's home but they did not find evidence linked to the burglary. A few days later, David Gilbert (Gilbert) bought twenty packs

of Marlboro cigarettes from Ballard for $60, and Ballard gave him three free packs of cigarettes. On March 10, 2011, Michael Gray (Gray) went to Ballard's residence and bought twenty packs of Marlboro Light for $50.

[8] Several months later, hair that had been found in the toboggan hat was linked to May through DNA testing. In January of 2015, May was interviewed, but he denied any involvement in the 2011 burglary. On February 9, 2016, the State filed an Information, charging Ballard with Count I, burglary, a Class C felony, I.C. § 35-43-2-1; and Count II, theft, a Class D felony, I.C. § 35-43-4-2. On February 16, 2016, the State added a third Count, vending machine vandalism, a Class B misdemeanor, I.C. § 35-43-4-7. A jury trial was held on February 16-18, 2016. In exchange for a reduced sentence, May testified at Ballard's trial. At the close of the hearing, the jury found Ballard guilty as charged. On March 18, 2016, the trial court held a sentencing hearing. The trial court vacated Ballard's conviction for theft and subsequently sentenced Ballard to four years in the Department of Correction for the burglary conviction—with eighteen months executed, eighteen months in home detention, and one year suspended to probation. Regarding to his vending machine vandalism conviction, the trial court sentenced Ballard to an executed sentence of 180 days.

[9] Ballard now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[10] Ballard first argues that the evidence is insufficient to sustain his conviction because May's testimony was incredibly dubious. In reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id*. (citation omitted). "Where the evidence of guilt is essentially circumstantial, the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence." *Jones v. State*, 924 N.E.2d 672, 674 (Ind. Ct. App. 2010) (citation omitted). Without question, a burglary conviction may be supported solely by circumstantial evidence. *Brink v. State*, 837 N.E.2d 192, 196 (Ind. Ct. App. 2005).

[11] This court may impinge upon the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony. *Lawson v. State*, 966 N.E.2d 1273, 1281 (Ind. Ct. App. 2012). If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Fajardo v. State*, 859 N.E.2d 1201,

1208 (Ind. 2007). This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, and wholly uncorroborated testimony of incredible dubiosity. *Id*. Incredibly dubious or inherently improbable testimony is that which runs counter to human experience and which no reasonable person could believe. *Campbell v. State*, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000). This incredible dubiosity rule applies only when a witness contradicts himself in a single statement or while testifying, and does not apply to conflicts between multiple statements. *Glenn v. State*, 884 N.E.2d 347, 356 (Ind. Ct. App. 2008), *trans. denied*.

[12] At Ballard's jury trial, May testified that Ballard called him at around midnight and asked him whether he had a saw. Ballard then picked up May and drove to Fairview Grocery Store. May testified that Ballard kicked the door to the store open and exited moments later with an arm full of cigarettes, and in a second entry, Ballard returned with a trash bag which May believed to have contained more packs of cigarettes.

[13] As for Ballard's claim that May's testimony is unbelievable, his argument fails because there was enough circumstantial evidence to support May's testimony that Ballard committed burglary. Webb, a co-owner of the grocery store, informed the police that she was missing a Tupperware container with $80 worth of loose change which she had taken from the vending machine the day before, and about $40 of rolled coins. Also missing from the store were approximately thirty packs of cigarettes. Shortly after the break-in, local businesses were notified to be on the lookout for someone using loose change to

make purchases. On the days that followed the burglary incident, Ballard used both loose and rolled coins to make purchases at CVS and several gas stations. In addition, close in time to the break-in, Ballard sold a substantial amount of cigarettes to two people.

[14] To the extent that Ballard claims that May's testimony is incredibly dubious because he altered his narration of events at trial implicating Ballard in the burglary, we note that a witness's trial testimony that contradicts that witness's earlier statements does not make such testimony incredibly dubious. *See Stephenson v. State*, 742 N.E.2d 463, 498 (Ind. 2001). Lastly, Ballard points to May's offhanded statement to the police where he stated "that a nigger is going to do what he's going to do." (Tr. p. 55). Ballard contends that this injected a bias with the jury members. In other words, Ballard suggests that his race—being black, was the only evidence of guilt. We disagree. Even without May's testimony, the State would still have had enough evidence to convict Ballard of burglary. The day after the burglary, Ballard was seen cashing large amounts of loose and rolled change at several local stores. Also, Ballard attempted to get cash for a pack of cigarettes he never purchased from a Marathon gas station. In that same month, Ballard sold packs of cigarettes to two individuals on separate occasions.

[15] With regard to Ballard's argument that May's testimony was not credible since it was offered in exchange for a mitigated sentence, we note that May's testimony was exposed to the jury's scrutiny because he too had been charged with the same crimes. Also, the jury was made aware of those charges, his

guilty plea, and sentence. It was within the jury's sole province to determine the credibility of May's testimony. *See Buelna v. State,* 20 N.E.3d 137 (Ind. 2014) (jury could reject or rely on the testimony of an accomplice to determine the defendant's guilt beyond a reasonable doubt); *see also White v. State,* 706 N.E.2d 1078, 1080 (Ind. 1999) (incredible dubiosity rule did not apply where witnesses testified and circumstantial evidence supported convictions even though three witnesses provided different information after being offered incentives; jury was presented with information about the incentives). In light of the foregoing, we conclude that there was sufficient evidence to sustain Ballard's conviction for burglary.

## II. *Inappropriate Sentence*[1]

[16]    Lastly, Ballard contends that his four-year sentence is inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is

---

[1] Pursuant to Indiana Administrative Rule 9(G)(2)(b) and Indiana Code section 35-38-1-13, the presentence investigation (PSI) report must be excluded from public access. However, in this case, the information contained in the PSI report "is essential to the resolution" of Ballard's claim on appeal. Ind. Admin. Rule 9(G)(7)(a)(ii)(c). Accordingly, we have included confidential information in this decision only to the extent necessary to resolve the appeal.

inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade the appellate court that the sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Id.*

[17] The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). For his Class C felony burglary, Ballard faced a sentencing range of two to eight years, with the advisory sentence being four years. I.C. § 35-50-2-6. Here, the trial court imposed the advisory sentence.

[18] As to the nature of the offense, Ballard called May in the middle of the night and asked to borrow a saw to open the vending machine outside Fairview Grocery Store. Ballard also enlisted the help of May. While May struggled to cut the vending machine open, Ballard kicked the door to the store open and made repeated trips into the store. Ballard only stopped taking items from the store when May warned him that the police were coming.

[19] When considering the character of the offender, one relevant fact is the defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct.

App. 2007). Ballard claims that he is a law-abiding citizen with a limited criminal history. While Ballard does not have an extensive criminal history, which includes one adjudication as a juvenile for public intoxication and two convictions of driving while suspended, the record shows that Ballard has not led a law-abiding life. In the PSI, Ballard admitted to using marijuana from age thirteen and that he became a regular smoker shortly thereafter. Ballard also disclosed that from age sixteen, he began using pain pills every day until he was twenty-two years old. In addition, Ballard confessed to using heroin from age seventeen and that he became heavily addicted to it. *See Bryant v. State*, 802 N.E.2d 486, 501 (Ind. Ct. App. 2004) (holding that when a defendant is aware that a substance abuse problem exists but does not seek treatment, the failure to act indicates something aggravating rather than mitigating about his character).

[20] Moreover, we note that Ballard was sentenced to four years for the burglary conviction, with eighteen months of his sentence to be served in the Switzerland County Jail, the other eighteen months of his sentence to be served in home detention, and the balance was suspended to probation. The trial court appears to have fashioned a sentence for Ballard that is appropriate to the nature of the offense and the character of the offender. We do not find otherwise.

## CONCLUSION

[21] Based on the foregoing, we conclude that there was sufficient evidence to convict Ballard of burglary, and Ballard's sentence is appropriate in light of the nature of the offense and his character.

[22] Affirmed.

[23] Barnes, J. concurs

[24] Bailey, J. concurs in result